# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1881, IN THE
SIXTY-SIXTH YEAR OF THE STATE.

———•◆•———

No. 8875.

### WILLS v. ROSS ET AL.

CONTRACT.—*Statute of Frauds.*—Where credit is given exclusively to one who orders goods, the contract is not within the statute of frauds, although the goods are actually furnished to a third person.

SAME.—*Credit to Third Party.*—If any credit is given to the third person, then the contract of the party who undertakes to pay must be in writing.

SAME.—*Effect of Statute of Frauds.*—The statute of frauds does not make parol contracts void; it simply prevents their enforcement.

SAME.—*Consideration.—Moral Obligation.*—A mere naked moral obligation will not support a contract.

SAME.—*Revival of Precedent Obligation by Express Promise.*—An express promise will revive a precedent obligation, in cases where there was an original valuable consideration for such promise, and its enforcement was suspended by some statute or positive rule of law.

SAME.—*Equitable Consideration.*—Where there is a valuable and adequate consideration for the precedent obligation, the subsequent express promise is supported by an equitable, and not a merely moral, consideration.

GUARANTY.—*Notice of Acceptance.*—Where there is an existing debt, known to the guarantor, it is not necessary that the creditor should notify him of the acceptance of the guaranty.

SAME.—*When Notice Required.*—Where there is a proposition to guarantee an unascertained debt to be created in the future, notice of acceptance is necessary.

SAME.—*Revival of Contract not Enforceable Because of Statute of Frauds.*—A subsequent written guaranty of payment, for goods furnished under a precedent verbal guaranty, is supported by the obligation created by the precedent verbal promise.

SAME.—*Statute of Frauds.*—A written promise to perform a verbal contract is valid, although no new consideration moves to the promisor at the time of making the subsequent written promise.

SAME.—*Consideration, how Ascertained.*—The entire business transaction between the parties is to be looked to in ascertaining the consideration for the contract of guaranty.

SAME.—*Consideration.*—*Forbearance to Principal.*—An agreement to forbear for an indefinite time, and actual forbearance for a reasonable period, are a sufficient consideration for the guarantor's undertaking. If no specific time is fixed by the agreement of the parties, the law presumes that a reasonable time was intended.

SAME.—*Construction.*—Contracts of guaranty, like all other contracts, are to be read by the light of the circumstances.

SAME.—*Description of Debt Guaranteed.*—It is not necessary that the debt guaranteed should be described with minute particularity.

SAME.—*Contract, how Evidenced.*—*Letters.*—It is enough, to meet the requirements of the statute of frauds, if the substance of the contract can be extracted from writings, although these writings are made up of disjointed fragments, as letters in a lengthy correspondence.

SAME.—*Reference by one Writing to Another.*—Where one of a series of writings distinctly refers to another, which contains the terms of the contract, it will be sufficient to take the case out of the statute.

SAME.—*Parol Evidence.*—Parol evidence is competent for the purpose of applying a contract of guaranty to its subject-matter.

SAME.—*Consideration.*—Under the statutes of this State, it is not necessary that the consideration for the guaranty should be in writing.

From the Bartholomew Circuit Court.

*W. Dixon,* for appellant.

*E. C. Buskirk* and *P. W. Bartholomew,* for appellees.

ELLIOTT, C. J.—Appellees' complaint alleges that Landers & Wills desired to buy goods of them; that appellant was present at the time; that they refused to give said firm of Landers & Wills credit; that thereupon the appellant promised them that, if they would sell goods to the said firm, "he

would be security to them for the payment of the same, and guarantee the payment'' of the price of the goods, and that, if it was not paid when due, he, the appellant, would pay it; that, relying solely upon the promise of appellant, and on his credit, they ''sold and delivered the bill of goods to the said appellant, for Landers & Wills;'' that, when the money for the goods became due, appellees wrote to appellant notifying him that the bill had not been paid, and demanding payment; that, in answer to their letter, appellant wrote as follows:

"ELIZABETHTOWN, IND., August 20th, 1879.
"*Messrs. Ross & Co., Indianapolis:*

"*Gentlemen:*—Yours at hand, and contents noted. Give John a little more time, and I will see that you get your money. Yours respectfully,

(Signed) ''P. E. WILLS.''

It is further alleged that the John mentioned in the letter is John Wills, a member of the firm of Landers & Wills; that, relying solely upon Peter E. Wills' written promise contained in said letter, and in consideration thereof, appellees granted said Peter E. Wills and said Landers & Wills an extension of six months time; that Landers & Wills are wholly insolvent, and that payment has often been demanded of appellant, and refused.

The appeal brings before us the sufficiency of this complaint. If it were clear that the goods were sold to Peter E. Wills and credit given exclusively to him, then the contract would be an original one, and not within the statute of frauds. *Johnson* v. *Hoover*, 72 Ind. 395. This, however, is not clear. It is not easy to determine what meaning and effect should be given to the complaint, for its allegations are not only obscure and confused, but they are also contradictory. Thus, it is in one place averred that ''the firm of Landers & Wills bought of appellees the bill of goods;'' in another, that ''appellant promised them that if they would

sell and deliver to John Wills said goods on credit he would be security for the payment of the same, and guarantee the payment of said debt when due, and if said debt was not paid when due he would pay the same ;'' and, in still another place, ''that, relying solely upon the promise of the appellant and on his credit, they sold and delivered the goods to him for the said Landers & Wills.'' The only reasonable construction which can be given these inharmonious allegations is, that the goods were sold to Landers & Wills, and payment guaranteed by the appellant. In other words, Landers & Wills are the principal debtors and appellant their guarantor. A case, such as that made by the complaint, is clearly within the statute, unless taken out by the written promise contained in the letter written on the 20th of August. The credit was given to the firm of Landers & Wills as the purchasers of the goods, and the undertaking of appellant was, therefore, not an original one. The case is not within the rule laid down in *Anderson* v. *Spence*, 72 Ind. 315. In the present case the purchasers, Landers & Wills, were liable to the appellees, and this alone deprives the appellant's undertaking of the character of an original contract. Wherever the parties for whom the third person undertakes is liable to the promisee, the case is within the statute : ''If any credit at all be given to the third party, the defendant's promise is required to be in writing as collateral. And the rule applies equally, where there is already an existing liability of the principal, and the evidence shows that the plaintiff by accepting the defendant as surety, does not release his claim upon the principal. All the cases show that it does not matter upon which of the two parties the plaintiff principally depends for payment, so long as the third party is at all liable to him to do the same thing which the defendant has engaged to do.'' Browne Statute of Frauds, sec. 197.

We proceed to consider whether the promise contained in

appellant's letter is sufficient to create a liability against him, in favor of the appellees. The letter is, of course, to be taken in connection with the other allegations of the complaint, and its effect, when thus considered, must be deemed decisive of the question of the sufficiency of the complaint. The general rule undoubtedly is, that a mere proposal to guarantee the payment of a debt is not obligatory. There must be a proposal and an acceptance. In the present case the complaint does aver that the proposition was accepted, and six months further time given to the principal debtor. The complaint does not allege that notice was given to the party proposing to become the guarantor, or that the appellees had acted upon the statements contained in his letter, and we are, therefore, required to decide whether notice is essential in such a case as the present. It must be kept in mind that the complaint shows that the debt had already been created ; that, prior to its creation, the appellant had orally promised to pay it in case Landers & Wills should not. There was an existing obligation, fully known to the appellant at the time the letter was written, and the written undertaking was, in truth, a mere renewal of the oral guaranty previously given. There is a well recognized and plainly marked distinction between cases where the proposal is to guarantee the payment of a liability existing at the time and known to the guarantor, and those where the proposal is to guarantee the payment of a debt not incurred, and the character and amount of which are not known to the guarantor. In the first class of cases, no notice of acceptance is required, for the guaranty becomes at once effective and operative. It is said by the author of a recent work upon this subject, that "The rule seems to be that if the guaranty is absolute in terms, definite as to amount and extent, notice is dispensed with." Baylies' Sureties and Guarantors, p. 195.

Another author thus states the rule : "When one directly

binds himself to be responsible for another's contract already made, and of which he has knowledge when he signs, no notice of the acceptance of the guaranty is necessary." Brandt Suretyship, etc., sec. 164.

This doctrine is recognized by our own decisions. In *Milroy* v. *Quinn*, 69 Ind. 406, it was said : "But the rule seems to be settled, that when the guaranty is direct, and the thing guaranteed definite in its amount, * * neither notice of the acceptance of the guaranty, nor of the default of his principal, need to be given to the guarantor ; for he knew when he made the guaranty the full extent of his liability." The later case of *Kline* v. *Raymond*, 70 Ind. 271, enforces the same doctrine, and gives approval to the cases of *Frash* v. *Polk*, 67 Ind. 55, and *Taylor* v. *Taylor*, 64 Ind. 356.

The question before us was exhaustively considered by the Supreme Court of the United States, in the very recent case of *Davis* v. *Wells*, reported in 13 Cent. L. J. 449, and many of the English and American cases are reviewed. It was said in the opinion delivered in that case : "But a guaranty may as well be for an existing debt, or it may be supported by some consideration distinct from the advance of the principal debtor, passing directly from the guarantee to the guarantor. * * * * In both of these cases, no notice of assent, other than the performance of the consideration, is necessary to perfect the agreement."

The rule, that where the guarantor's undertaking is to pay an existing debt, of a definite and known character, no notice of assent is necessary, is conclusively settled by the authorities to which we have referred, and can not be regarded as an open question.

The promise of the appellant made at the time the goods were sold was voidable, and not void. The statute of frauds does not invalidate a parol contract. In *Owens* v. *Lewis*, 46 Ind. 488, this familiar doctrine was thus expressed : "A contract that is required to be in writing by the statute of

frauds is not invalid if made by parol. 'The statute only inhibits all actions brought to enforce it.' *Hadden* v. *Johnson,* 7 Ind. 394.'' Browne Statute of Frauds, p. 118 ; *Crosby* v. *Wadsworth,* 6 East, 602 ; *Mather* v. *Scoles,* 35 Ind. 1.

The promise contained in appellant's letter might well be rested upon the consideration arising from his obligation to perform his original promise. In saying this we do not mean to question the now familiar rule, that ''An express promise, therefore, as it should seem, can only revive a precedent good consideration, which might have been enforced at law through the medium of an implied promise, had it not been suspended by some positive rule of law, but can give no original right of action, if the obligation on which it is founded never could have been enforced at law, though not barred by any legal maxim or statute provision.'' *Wennall* v. *Adney,* 3 Bos. & P. 247 ; *Wiggins* v. *Keizer,* 6 Ind. 252.

We do mean to say that there are well defined and well recognized exceptions to the general rule, that what is called, although inaptly, a moral obligation will not support a contract, and that this case is fully within the exception. It is within the exception, for the reason that the original verbal promise was not void, and did rest on a valuable consideration. It is within the exception because the promise could have been enforced but for the barrier erected by a positive statute. It is within the exception, for the statute of frauds affects, not the contract, but the evidence only. Browne Statute of Frauds, sec. 115*a*.

In speaking of the rule, that a moral consideration will not support a contract, one of our standard text-writers says: ''A qualification to this rule, however, obtains in cases where there was originally a sufficient valuable consideration upon which an action could have been sustained, but where, in consequence of some statute or positive rule growing out of general principles of public policy, the right of action is suspended, and the party is exempted from legal

liability." After stating some of the cases which fall within the exception to the general rule, the author proceeds thus: "The ground upon which these exceptions are founded, is, that these contracts being merely voidable and not void, in their inception, they may be revived by a subsequent promise, provided they were originally founded upon an express or implied request by the party benefited." Story Contracts, secs. 591, 593.

The doctrine stated by the author quoted is abundantly sustained by the adjudged cases, and by the elementary writers. 1 Parsons Contracts, 434 n. Some of the cases speak of such a consideration as an equitable obligation, and this is the more appropriate term; it better expresses the nature of the consideration than does the term "moral obligation." Whatever may be the correct name, the principle is a sound and well recognized one. It is the principle which underlies and supports the cases holding that debts barred by the statute of limitations, by discharges under bankruptcy or insolvents acts, may be revived. Shockey v. Mills, 71 Ind. 288; Rogers v. Stephens, 2 T. R. 713. Upon it are bottomed those cases which hold that a verbal contract creates such an obligation as will support a conveyance made by an insolvent debtor against creditors who attack it upon the ground of fraud. Sackett v. Spencer, 65 Pa. St. 89; Livermore v. Northrup, 44 N. Y. 107; Hyde v. Chapman, 33 Wis. 391; Goff v. Rogers, 71 Ind. 459; Brown v. Rawlings, 72 Ind. 505. To a much greater length is this doctrine carried in Flight v. Reed, 1 Hurl. & C. 702, wherein it is held that a subsequent promise to pay a debt absolutely void under the statute against usury, in force when it was contracted, may be supported upon the original consideration. Chief Baron Pollock there referred to the term "moral obligation," in this language: "Such a consideration has been sometimes called a moral consideration. And we think unfortunately so; for the term used as a definition tends to

Wills *v.* Ross *et al.*

include too wide a range of objects.'' The decision of Baron PARKE in *Earle* v. *Oliver*, 2 Exch. 71, is approvingly quoted. In the case last mentioned it was said : ''The principle of the rule laid down by Lord MANSFIELD is, that where the consideration was originally beneficial to the party promising, yet if he be protected from liability by some provision of the statute or common law, meant for his advantage, he may renounce the benefit of that law ; and if he promises to pay the debt, which is only what an honest man ought to do, he is then bound by the law to perform it.'' The provision, that contracts of guaranty shall be in writing, is one for the benefit of the guarantor, and he may therefore renounce it, and bind himself by a subsequent written contract. In truth, he was already bound ; the statute neither makes nor un-makes such a contract. The question we have in hand is not altogether barren of authority. It is said by an English author, in speaking of the general rule, that a mere moral consideration is not sufficient : ''So, again, a contract which, for want of written evidence required by statute, can not be sued upon, may be revived by express promise, provided the statute did not render the contract absolutely void for want of written evidence.'' De Colyar Guaranties, 37. The only adjudicated case directly in point, which we have seen, is that of *Wilson* v. *Marshall*, 15 Ir. C. L. 466, where it was held that the original valuable consideration formed a sufficient one for the subsequent contract. In delivering the opinion of the court, the Chief Justice declared that the case came clearly within the rule in *Wennall* v. *Adney*, *supra*. The language of the learned Chief Justice was : ''It appears to me this case comes within that rule. Here, there was clearly a legal liability on the part of the defendant under his guaranty, which the statute of frauds did not vacate or annul, but rendered it incapable of being enforced for want of legal evidence.''

In Chitty on Contracts it is said : ''A promise to pay

a debt already incurred by a third person is not available unless it be made on a new consideration, such as forbearance; but if the credit were originally given to the third person at the promisor's request, this might constitute a sufficient consideration for his subsequent guaranty." 11th Am. ed., 62. As the sale of the goods was in the first instance made upon the promise of the appellant to pay for them, and, this too, after credit had been refused, as he knew, to the principal debtors, his subsequent written promise may be equitably and justly deemed to be supported by the obligation arising out of the consideration of his previous verbal promise. Moreover, there was the further consideration of forbearance. The consideration is not to be extracted from one part of the transaction, the entire business affair between the parties is to be taken into account, for the purpose of ascertaining whether the contract of guaranty is supported by a consideration. The consideration expressed in the letter is, however, of itself sufficient to support the contract. The rule is thus laid down: "An agreement on the part of the creditor for general indulgence toward the principal, without any definite time being specified, with proof of actual forbearance for a reasonable time, is sufficient." Brandt Suretyship, etc., sec. 8. Another author uses this language: "It appears also to be the better opinion that such postponement need not be for a specific length of time, but that an agreement to postpone indefinitely, with proof of actual forbearance for a reasonable term, will be sufficient." Browne Statute of Frauds, sec. 190; 1 Parsons Contracts, 442; 1 Chitty Contracts, 11th Am. ed., 36 *n*. The English decisions have been somewhat conflicting. In *Oldershaw* v. *King*, 2 H. & N. 399, it was decided, POLLOCK, C. B., dissenting, that, where no time was stated, the consideration of forbearance was not sufficient, but, upon appeal, this decision was reversed. COCKBURN, C. J., and ERLE, WILLIAMS, CROMPTON and WILLES, JJ., all giving opinions upon the

question. *Oldershaw* v. *King*, 2 H. & N. 517. The Supréme Court of Vermont, in passing upon a question similar to that before us, said : "It is farther said, that, inasmuch as there is no particular time stipulated for the forbearance, the instrument is void for want of consideration.    This objection is untenable. 'If no agreement be made as to the length of time during which the promisee will forbear, the law will presume, that he undertakes to forbear for a reasonable time ; and this is sufficiently certain and is a good consideration.' " *Hakes* v. *Hotchkiss*, 23 Vt. 231. This fully harmonizes with the principle so often approved and applied, that where parties stipulate for the performance of an act, but do not designate the time within which it shall be done, the law will presume that a reasonable time was intended.

There is an obvious distinction between the case of a guarantor seeking to avoid liability because of the insufficiency of consideration, and the case of a surety claiming a release because of the extension of time to the principal. In the one case, the question is solely as to the adequacy of the consideration.    In the other, the question is whether the creditor has fettered himself by a contract of forbearance. There are sound reasons for holding, in the latter case, that the time must be definite.    If indefinite, the creditor may sue at once.    If definite, he can not sue until the expiration of the extension, as some of the cases hold ; if, as other cases hold, he may sue, he can not sue without incurring the hazard of an action for damages for breach of the contract of forbearance, and his freedom of action is thus hampered, to the prejudice of the surety.    These reasons have not a feather's weight where the question is as to the adequacy of the consideration of the contract of guaranty.

The complaint shows that the debt guaranteed in the appellant's letter is the one upon which the action is founded. The circumstances of the original purchase, the letter of appellees to him, and his reply must be taken as parts of one

cause of action, and, thus taken, show with sufficient certainty that the debt of which appellant guaranteed payment is that described in the complaint. It is not essential that the debt should be described with minute particularity. Contracts of guaranty, like all other contracts, are to be read "by the light of surrounding circumstances." *Belloni* v. *Freeborn*, 63 N. Y. 383; *Lawrence* v. *McCalmont*, 2 How. U. S. 426; *The Union Bank, etc.*, v. *Coster's Ex'rs*, 3 N. Y. 203.

Judgment affirmed.

## On Petition for a Rehearing.

ELLIOTT, C. J.—In the argument on the petition for a rehearing, it is insisted that the complaint does not show such a written contract as satisfies the requirements of the statute of frauds. If the law required the consideration to be stated in the written instrument, there would be much force in this argument. The law, however, makes no such requirement. It is expressly enacted: "The consideration of any such promise, contract, or agreement, need not be set forth in such writing, but may be proved." 1 R. S. 1876, p. 504; R. S. 1881, sec. 4905; *Hiatt* v. *Hiatt*, 28 Ind. 53.

The promise to pay the debt of Landers & Wills is in writing. There is no necessity for resorting to parol evidence to establish the appellant's guaranty. His own letter by reference makes that written him by appellees a part of one and the same contract. Promises contained in letters will satisfy the requirements of the statute. It is said in one of our standard text-books: "It is enough, in order to meet the requirements of the statute, if the substance of the contract is to be inferred from writings, either by the parties or by their agent, though these writings are made up of disjointed memoranda, or of a protracted correspondence. For this purpose it will be enough to produce a letter or mem-

orandum signed by the party or his agent, though it does not contain in itself any one of the terms of the agreement, if it distinctly refers to and recognizes any writing which does contain them." 2 Wharton Ev., sec. 872.

It is a well settled rule that parol evidence is admissible to apply a contract to its subject-matter. *Stoops* v. *Smith*, 100 Mass. 63; S. C., 1 Am. R. 85; *Swett* v. *Shumway*, 102 Mass. 365; S. C., 3 Am. R. 471. This doctrine applies to contracts of guaranty. In the last edition of Browne on the Statute of Frauds it is said: "From these cases it seems the later authorities allow the introduction of parol evidence in this case as in others, to apply the writing relied on, as one made with reference to and in recognition of the contract sued on." Sec. 375*a*. Among the cases cited in support of the text are *The Salmon Falls Manuf. Co.* v. *Goddard*, 14 How. (U. S.) 446; *Newell* v. *Radford*, L. R. 3 C. P. 52; *Harvey* v. *Stevens*, 43 Vt. 653.

A recent writer thus states the rules for the construction of guaranties: "*First.* Guaranties are to be governed by the same rules of construction as other contracts. *Second.* The terms used and the language employed are to have a reasonable interpretation according to the intent of the parties as disclosed by the instrument read in the light of the surrounding circumstances and purposes for which it was made. *Third.* That if the terms are ambiguous the ambiguity may be explained by reference to the circumstances surrounding the parties, and such other aids as are allowable in other cases of ambiguous contract." Baylies Sureties & Guarantors, 111.

Petition overruled.